CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 29 2016

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIAM LEE ANDERSON, II,<br>Plaintiff, | ) ) ) | Civil Action No. 7:15-cv-00236 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| PHILIP H. WITHERSPOON, et al.,<br>Defendants. | ) ) | By: Hon. Michael F. Urbanski<br>United States District Judge |

William Lee Anderson, II, a Virginia inmate proceeding pro se, commenced this civil action pursuant to 42 U.S.C. § 1983. Plaintiff complains about the dental treatment provided by Dr. Philip H. Witherspoon, the former dentist at the Augusta Correctional Center ("ACC").[1] Dr. Witherspoon filed a motion for summary judgment, to which Plaintiff responded and filed his own motion for summary judgment. After reviewing the record, the court denies the parties' motions for summary judgment without prejudice, orders Dr. Witherspoon to file a new motion for summary judgment, and refers the matter for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.

Dr. Witherspoon first saw Plaintiff at ACC on May 22, 2014, because Plaintiff experienced pain in his mouth and thought a filling fell out of tooth number 4, 5, or 6. Dr. Witherspoon examined Plaintiff and determined that tooth number 4 was missing, that tooth number 5 had an intact filling, and that tooth number 6 was worn but did not show evidence of having ever been filled. In contrast to Plaintiff's complaint, Dr. Witherspoon did not find a hole where a filling had fallen out.

---

[1] The court terminated the only other defendant by a prior memorandum opinion and order.

In an informal complaint dated May 26, 2014, Plaintiff alleged that a medical doctor had told Plaintiff that he could see a nerve ending in a hole in one of Plaintiff's teeth. Dr. Witherspoon responded on May 28, 2014, stating, "There is no record of a physician noting that you have a hole in a tooth."

On July 5, 2014, Plaintiff filed a request for a dental appointment, stating, "[H]ave a gum infection or something it's painful. Please help." Dr. Witherspoon responded on July 7, 2014, saying, "I will pass your req[uest] to [staff] to schedule you for evaluation/treatment. Do you need pain medication?" Plaintiff does not allege that he requested pain medication.

Dr. Witherspoon examined Plaintiff again on July 10, 2014, for his complaint about a gum infection around tooth numbers 5 and 6. Dr. Witherspoon did not observe any clinical pathology and noted his impression of sinusitis.

At the appointment on August 18, 2014, Plaintiff complained that tooth number 11 was broken. Dr. Witherspoon examined Plaintiff and found the tooth was intact.

On December 27, 2014, Plaintiff requested a dental appointment to "have a few bad teeth that needs fixed [sic] ASAP painful[]." Dr. Witherspoon responded on December 29, 2014, noting that Plaintiff would be scheduled for an evaluation.

Before Dr. Witherspoon would see Plaintiff at their next appointment, Plaintiff and his cellmate extracted Plaintiff's lower right wisdom tooth on January 9, 2015, because Plaintiff thought it was infected. "We used 2 pair of unsanitary fingernail clippers[,] several large spoons from chowhall[,] several big pens[,] and many long strands of nylon[.] Once out of [the] jaw bone, the roots were holding it in where cellmate wrapped nylon around the roots and yanked it

2

out. It was a most painful torture I'v[e] ever had to experience with a bloody mess looking like a crime scene/battlefield." Plaintiff's face allegedly developed bruises as a result of the extraction.

On January 22, 2015, Plaintiff presented to the dental department wanting his "bad teeth fixed," but he had no specific complaint. Dr. Witherspoon determined that Plaintiff's exam data was out of date and that an exam should be scheduled. Plaintiff does not allege that Dr. Witherspoon examined his mouth or that he told Dr. Witherspoon about the extraction from two weeks earlier.

On February 25, 2015, Plaintiff presented for an exam and complained that he had "intense pain" from a "split tooth." Dr. Witherspoon says that Plaintiff refused pain medication. Dr. Witherspoon did not observe a split tooth but advised Plaintiff that tooth number 11 was worn from grinding, the opposing tooth was in contact with number 11, and no treatment was indicated. Plaintiff does not allege that he told Dr. Witherspoon about the extracted wisdom tooth from nearly seven weeks earlier. Dr. Witherspoon noted in the medical record that Plaintiff was argumentative and uncooperative during the exam, and Plaintiff alleges that Dr. Witherspoon said, "If you don't close your mouth I'm going to put my foot in it." The appointment on February 25, 2015, was Dr. Witherspoon's last contact with Plaintiff because, according to Plaintiff, Dr. Witherspoon was fired soon after their last appointment.

Plaintiff alleges that on March 5, 2015, a medical doctor examined, inter alia, his mouth, noting that he has a broken right upper tooth and a gum infection. Plaintiff further alleges that on March 15, 2015, a new dentist at ACC replaced a filling that Dr. Witherspoon said was not missing. Plaintiff argues that, had Dr. Witherspoon identified the missing filling, Plaintiff would not have developed a sinus infection that disfigured his nostrils.

3

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial.[2] Id. at 322-24. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). Notably, Plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

---

[2] Plaintiff filed two motions for the court to consider specific exhibits – X, XX, XXX, XA, XB, XC, and XD – in opposition to summary judgment. These motions are granted to the extent that only those specific exhibits are considered.

4

## III.

A state actor violates the Eighth Amendment when acting with deliberate indifference to an inmate's serious medical need. West v. Atkins, 487 U.S. 42, 48 (1988); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Conner v. Donnelly, 42 F.3d 220, 222 (4th Cir. 1994). Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Miltier, 896 F.2d at 851-52. A health care provider may be deliberately indifferent when the treatment provided is so grossly incompetent, inadequate, or excessive as to shock the conscience or is intolerable to fundamental fairness. Id. at 851. A medical need serious enough to give rise to a constitutional claim involves a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

The record reflects that Dr. Witherspoon examined Plaintiff on multiple occasions in response to Plaintiff's requests for appointments, specifically addressing Plaintiff's complaints about a missing filling, infected gums, and a broken tooth. Dr. Witherspoon examined Plaintiff

5

on May 22, 2014, and found filling was missing as Plaintiff had complained. Dr. Witherspoon examined Plaintiff again on July 10, 2014, and diagnosed Plaintiff with sinusitis, not a gum infection as Plaintiff had complained. Dr. Witherspoon examined Plaintiff on August 18, 2014, and did not observe tooth number 11 to be broken as Plaintiff had complained. Dr. Witherspoon responded to Plaintiff's December 27, 2014, request for an appointment on December 29, 2014, noting that Plaintiff would be scheduled for an evaluation.

However, Dr. Witherspoon does not address the claim about the on-going pain Plaintiff experienced in his mouth. Plaintiff complained of mouth pain starting in at least May 2014, and Plaintiff has alleged that he never received treatment for the underlying cause of pain. Viewing the inferences in the light most favorable to Plaintiff, the continual pain would have to be excruciating for a prisoner to allow a cellmate to extract a tooth using fingernail clippers, spoons, pens, and string. Dr. Witherspoon's motion for summary judgment wholly fails to address the fact that Plaintiff's dental pain was so great he had to extract his own tooth. Dr. Witherspoon also fails to address any appearance of trauma from the alleged extraction or facial bruising that could have been apparent during the appointment on February 25, 2015. Consequently, a trier of fact could conclude that Dr. Witherspoon exhibited deliberate indifference to that pain or that treatment was so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness. Given the state of the record and Dr. Witherspoon's failure to respond to the allegation about the extraction, each party's motion for summary judgment is denied without prejudice. Pursuant to Standing Order 2013-6, Dr. Witherspoon shall file a motion for summary judgment within thirty days, and this matter is referred to United States Magistrate Judge Joel C. Hoppe to conduct hearings, including evidentiary hearings, and to

6

submit proposed findings of facts and recommendations for that motion, pursuant to 28 U.S.C. § 636(b)(1)(B).

## IV.

For the foregoing reasons, the court grants in part Plaintiff's motions to incorporate affidavits and denies the parties' motions for summary judgment without prejudice. Dr. Witherspoon shall file another motion for summary judgment, and this action is referred to Magistrate Judge Joel C. Hoppe.

**ENTER:** This 28 day of June, 2016.

/s/ Michael F. Urbanski
United States District Judge